IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JENNIFER D.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>    Defendant. | Case No. 1:21-cv-01358-JES-JEH |

### Report and Recommendation

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 12)[1] and the Commissioner's Motion for Summary Affirmance (Doc. 15). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be denied and the Defendant's Motion for Summary Affirmance be granted.[2]

**I**

Jennifer D. filed an application for supplemental security income (SSI) on July 17, 2019, alleging disability beginning on November 1, 2017. Her SSI claim was denied initially on November 22, 2019 and upon reconsideration on April 9, 2020. After a request for hearing before an administrative law judge, a hearing was held on February 2, 2021 before the Honorable John M. Wood (ALJ) at which time Jennifer amended her alleged onset date to July 17, 2019. At the hearing, Jennifer was represented by an attorney, and Jennifer and a vocational expert (VE) testified.

---

[1] Filed as "Appellant's Brief."
[2] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 9) on the docket.

1

Following the hearing, Jennifer's claim was denied on March 31, 2021. Her request for review by the Appeals Council was denied on October 6, 2021, making the ALJ's Decision the final decision of the Commissioner. Jennifer timely filed the instant civil action seeking review of the ALJ's Decision on December 7, 2021.

## II

Jennifer challenges the ALJ's Decision for the following reasons: 1) the ALJ's Decision is not supported by substantial evidence where he violated SSR 16-3p; and 2) the ALJ's Decision is not supported by substantial evidence where he erred by providing only a perfunctory analysis at Step Three.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 416.966. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Jennifer claims error on the ALJ's part at Steps Three and Four.

### A

At Step One, the ALJ determined Jennifer had not engaged in substantial gainful activity since July 17, 2019, the amended alleged onset date. AR 17. At Step Two, the ALJ determined Jennifer had the following severe impairments: Degenerative Arthritis in the Spine; Sinus Tachycardia and Postural Hypotension; Neurocardiogenic Syncope; Obesity; Fibromyalgia; Organic Mental Disorder; and Anxiety. AR 18. At Step Three, the ALJ determined Jennifer did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id*. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR 416.967(a) except she cannot climb ladders, ropes, or scaffolds. She can balance, stoop, kneel, crouch and crawl, and climb ramps and stairs. She can occasionally perform overhead reaching, but all other bilateral manipulative functioning frequently. She must avoid environmental hazards such as unprotected heights and dangerous machinery. She must avoid concentrated exposure to extreme temperatures. She has a limitation to understanding simple and routine instructions, to making simple work-related decisions, and to the performance of simple and routine tasks on a sustained basis with little or no change in work settings or duties. Those work tasks can be detailed but not complex; [sic] She must not interact with the public, and can have only occasional interaction with coworkers and supervisors.

AR 21. He found Jennifer was unable to perform any past relevant work. AR 25. At Step Five, the ALJ determined that considering Jennifer's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Jennifer could perform. AR 26. Thus, the ALJ concluded Jennifer had not been under a disability since July 17, 2019, the amended alleged onset date. AR 27.

**B**

Jennifer first argues that the ALJ did not correctly apply the framework of SSR 16-3p as to her severe impairment of autonomic dysfunction. Specifically, she argues that she presented evidence about and testified that she was unable to work because of the unpredictable nature of her autonomic dysfunction, but the ALJ did not provide meaningful reasons to disagree with that allegation. The Commissioner counters that the ALJ cited substantial evidence that conflicted with Jennifer's allegations and suggested that she was not as disabled as alleged including normal examination findings, that Jennifer's treatment record failed to support her allegation that she needed to elevate her legs due to her autonomic dysfunction, and that he relied on the State Agency physicians' opinions.

SSR 16-3p provides that all the evidence, including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms and also the factors set forth in 20 C.F.R. § 416.929(c)(3) are to be considered including: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms. SSR 16-3p, at *7-8.

Here, Jennifer argues the ALJ's analysis suggests he did not understand the complex nature of her autonomic dysfunction with associated syncope. Citing medical literature, Jennifer points out that orthostatic hypotension, rapid heart rate, and hypertension are all symptoms of autonomic dysfunction and that while there is no cure for autonomic dysfunction, treatment consists of elevation and rapid infusion of water given intravenously. She highlights evidence of record from treating doctor Christopher R. Hughes, M.D. dated between 2018 and 2021 that: he told her to lie down on her back with legs elevated on a chair to treat syncope episodes; Jennifer

5

required saline infusions, baclofen, salt tablets, and staying hydrated as treatment for her autonomic dysfunction; and Jennifer appeared chronically fatigued and had orthostatic blood pressure and increased heart rate when standing. She also notes that cardiologist David W. Koh, M.D. explained in 2019 that Jennifer experienced "objective desaturations with exertion." AR 636. She ultimately contends that the record consists of a longitudinal history of unsuccessful treatment with multiple specialists for symptoms of autonomic dysfunction and her testimony is consistent with Dr. Hughes' recommendation for her to lie down with her feet elevated, but the ALJ's Decision was focused on clinical evidence related to her fibromyalgia and degenerative disc disease.

In his Decision, the ALJ explicitly recognized that Jennifer alleged disability due to, among other things, dysautonomia[3], orthostatic hypotension[4], and neurocardiogenic syncope.[5] Surely, the ALJ's explicit discussion of the record medical evidence pertaining to Jennifer's autonomic dysfunction is sparse, where, for instance, he made no mention of the saline infusions Jennifer received as treatment for it. However, the ALJ explicitly confronted Jennifer's "assertion that it has been medically necessary to elevate her legs secondary to her diagnosis of autonomic dysfunction and neurocardiogenic syncope for the past five years," considering it alongside Dr. Hughes' January 2021 opinion that she would need to elevate her legs above her waist "Constant to 80% of the time" during an eight-hour workday. AR 24 (citing AR 743). The ALJ observed that Dr. Hughes failed to support his opinion with citations to Jennifer's longitudinal treatment record and that the opinion was contradicted by his own treatment notes where he stated, "Per my clinical assessment, she appears to be

---

[3] "Any condition or disease in which the sympathetic or parasympathetic parts of the autonomic nervous system malfunction." Taber's Online, https://www.tabers.com/tabersonline/view/Tabers-Dictionary/751440/all/dysautonomia (last visited Dec. 21, 2022).

[4] "Hypotension occurring when a person assumes an upright position after getting up from a bed or chair." Taber's Online, https://www.tabers.com/tabersonline/view/Tabers-Dictionary/760506/all/hypotension?q=hypotension#1 (last visited Dec. 21, 2022).

[5] Syncope is defined as "[t]ransient, usually sudden loss of consciousness, accompanied by an inability to maintain an upright posture." Taber's Online, https://www.tabers.com/tabersonline/view/Tabers-Dictionary/737640/all/syncope#15 (last visited Dec. 21, 2022).

6

medically fit to act as a substitute teacher." *Id.* (citing AR 552). He continued that Dr. Hughes' post-hearing clarifying letter of February 12, 2021 only referenced the "potential need" for certain limitations including leg elevation, but "potential concerns" were "not an assessment of actual functional limitations premised on objective longitudinal treatment" and was therefore not persuasive. *Id.* (quoting AR 788). The ALJ found Dr. Hughes' January and February 2021 opinions "not persuasive" overall where they were "internally inconsistent with contemporaneous treatment notes, based largely on the subjective presentation of claimant, and are generally not supported by the evidence as a whole such as objective medical findings via physical examination findings or objective testing." AR 23-24. Of note, Dr. Hughes' January 2021 opinion detailed the treatment Jennifer received, including intermittent saline infusions and salt tablets. Jennifer does not challenge the ALJ's evaluation of Dr. Hughes' opinions. To the extent the ALJ addressed Jennifer's allegations and Dr. Hughes' opinions as to Jennifer's need to elevate her legs, his analysis of Jennifer's autonomic dysfunction was not as lacking as she insists.

Moreover, the Commissioner points out that while Jennifer was diagnosed with sinus tachycardia[6] (which the ALJ found as a severe impairment) related to her diagnosis of autonomic dysfunction, the heart rates documented in the record were invariably normal. As for her alleged orthostatic hypotension[7] caused by her autonomic dysfunction, Jennifer's documented blood pressure readings in the record were invariably normal. Jennifer does not point to, nor can the Court find in the record that any doctor observed, documented, or reproduced her alleged syncope at any point. Also, there was just one instance in the record where an orthostatic blood

---

[6] "A rapid heart rate (over 100 [beats per minute]) originating in the sinoatrial node." Taber's Online, https://www.tabers.com/tabersonline/view/Tabers-Dictionary/734142/all/tachycardia?q=sinus+tachycardia#18 (last visited Dec. 21, 2022).

[7] Hypotension is the "decrease of the systolic and diastolic blood pressure to below normal." Taber's Online, https://www.tabers.com/tabersonline/view/Tabers-Dictionary/760506/all/orthostatic%20hypotension#1 (last visited Dec. 21, 2022). Normal blood pressure is less than 120/80 millimeters of mercury. Centers for Disease Control and Prevention, https://www.cdc.gov/bloodpressure/about.htm (last visited Dec. 21, 2022).

pressure and increased heart rate were identified: Dr. Hughes stated during examination on January 7, 2021 that orthostatic blood pressures "are noted today particularly with standing" and "Heart rate increases as well as standing." AR 736.

Additionally, the ALJ found that with respect to Jennifer's physical impairments, the State Agency physicians' physical assessments were "reasonably consistent with the medical evidence and the claimant's longitudinal treatment record[.]" AR 25. Both State Agency physicians had before them Jennifer's allegations of chronic fatigue, orthostatic hypotension, and neurocardiogenic syncope and medical evidence dated between 2018 and 2019, including from Drs. Hughes and Koh, that pertained to Jennifer's autonomic dysfunction. Each specifically explained that the exertional, postural, and environmental limitations to which they opined were supported by evidence of, among other things, Jennifer's autonomic dysfunction. As with Dr. Hughes' opinions, Jennifer does not challenge the ALJ's evaluation of the State Agency physicians' opinions.

These opinions provide substantial evidence in support of the ALJ's RFC finding. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (explaining that although the ALJ did not explicitly consider the claimant's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions where the ALJ adopted the limitations suggested by the specialists and reviewing doctors who were aware of the claimant's obesity); *Anders v. Saul*, 860 F. App'x 428, 433 (7th Cir. 2021) (unpublished opinion) (stating it was appropriate for the ALJ to look favorably on the State Agency physicians' opinions "on the basis that they are 'highly qualified and experts in Social Security disability evaluation'") (quoting 20 C.F.R. § 404.1513a(b)(1)); *see also Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018) (finding substantial evidence supported the ALJ's decision where, among other things, the ALJ further relied on State Agency reviewing physicians). Even if the Court were to find the State Agency physicians' consideration of Jennifer's autonomic dysfunction cannot be imputed to the ALJ, the fact remains that there is no glaring discrepancy between the

longitudinal treatment record and the State Agency physicians' summary of that record such that the ALJ harmfully failed to actually consider the medical evidence against their assessments. *See Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021) (finding the ALJ gave "solid, substantiated reasons" for giving more weight to the State Agency physicians' opinions than to the plaintiff's claims about the limiting nature of her symptoms, the plaintiff bore the burden to prove disability by producing medical evidence, and the ALJ reasonably relied on the State Agency physicians).

With regard to the ALJ's reliance upon Jennifer's normal examination findings – negative for localizing sensory or motor deficits, normal muscle strength and tone, normal gait – those were not so irrelevant to her autonomic dysfunction as to offer no support for the ALJ's subjective symptom evaluation insofar as that impairment was concerned. As the Commissioner argues, the lack of findings supporting Jennifer's allegations of disabling pain (due to fibromyalgia and degenerative arthritis) undermined her allegations generally, including her allegations about the limiting effects of her autonomic dysfunction. That the ALJ found record support lacking for the extent of symptoms Jennifer experienced *overall* is obvious when the Decision is read as a whole; in addition to normal examination findings, the ALJ cited Jennifer's actual functioning and addressed the fact that Dr.Hughes stated Jennifer appeared medically fit to act as a substitute teacher. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) (explaining that it is proper to read the ALJ's decision as a whole).

All the foregoing is to say that the ALJ's error in not more fully discussing the record evidence pertaining to Jennifer's autonomic dysfunction, generally, and the treatment she received for it, specifically, was harmless. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result). It is the claimant who bears the burden to prove disability. Jennifer's brief highlights her autonomic dysfunction and all that may follow from that. But diagnosis alone is not sufficient to prove disability, and the

9

particular things she highlighted in her brief – leg elevation and saline infusions – were actually covered in the ALJ's Decision (the latter via his consideration of Dr. Hughes' January 7, 2021 opinion).  *See Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) (explaining that the claimant "must establish through other evidence [where physicians said nothing about when or if the claimant became disabled] an actual disability during the insured period.  It is not enough to show that she had received a [particular] diagnosis . . . .").

C

The harmless error doctrine similarly rescues the ALJ's Step Three analysis as to whether Jennifer's autonomic dysfunction met or equaled Listing 4.05, which includes:

> Recurrent arrhythmias, not related to reversible causes, such as electrolyte abnormalities or digitalis glycoside or antiarrhythmic drug toxicity, resulting in uncontrolled (see 4.00A3f), recurrent (see 4.00A3c) episodes of cardiac syncope or near syncope (see 4.00F3b), despite prescribed treatment (see 4.00B3 if there is no prescribed treatment), and documented by resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope (see 4.00F3c).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.05.  Jennifer faults the ALJ for citing the language of the listing but not stating whether he believed she met or equaled the listing and why.  She argues the error is not harmless because the evidence supports a finding that she equaled Listing 4.05 where she showed her impairment is accompanied by symptoms equal in severity to those described in the listing.  *See* 20 C.F.R. § 416.926(b)(1)(ii) ("We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria").  A claimant must show that her impairments satisfy all the criteria specified in a listing to meet or equal that listing.  *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999); 20 C.F.R. § 416.925(d) ("To

meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria in the listing").

"In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)).  Here, at Step Three, the ALJ merely identified Listing 4.05 and cited its language.  Citing Dr. Hughes' 2018 letter that confirmed Jennifer had syncope related to her autonomic dysfunction despite treatment from multiple specialists, clinical records from Drs. Hughes and Koh documenting orthostasis and objective desaturations with exertion, Jennifer's pulmonologist's documentation of hypoxemia with activity, caseworkers' at the State of Illinois statements of syncope as one of Jennifer's symptoms, and Jennifer's reported recurrent syncope episodes, Jennifer argues the evidence shows recurrent syncope despite following prescribed treatment.

An ALJ's perfunctory listing analysis *and* a failure to mention the specific listings he is considering *may* require a remand.  *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (emphasis added).  First, here, the ALJ *did* mention the specific listing – 4.05 – he considered.  Second, significantly, in his consideration of the State Agency physicians' opinions, the ALJ found, "The record supports the State Agency findings that the claimant does not have a condition that meets or equals a Listing and that she is not disabled."  AR 25.  In *Scheck v. Barnhart*, the Seventh Circuit Court of Appeals explained that where State Agency physicians filled out Disability Determination and Transmittal forms and stated that the claimant was not disabled, those forms "conclusively establish that consideration by a physician designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review" and that an "ALJ may properly rely upon the opinion of these medical experts" such that substantial evidence supported a finding that the claimant did not meet or equal a listing.  357 F.3d 697, 700 (7th Cir.

2004). Here, the State Agency physicians similarly filled out those forms, considered Listing 4.05, and ultimately determined Jennifer was not disabled. They had before them many of the records to which Jennifer points in her brief. Again, it was Jennifer who bore the burden to prove she was disabled and, at Step Three, to present evidence that she equaled a listing. *See Maggard*, 167 F.3d at 379 ("The claimant bears the burden of proving his condition meets or equals a listed impairment"). She does not point to an opinion on medical equivalence from any of her treating doctors, and she is therefore unable to point to a contradictory opinion on medical equivalence. *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010) (unpublished opinion).

Finally, Jennifer makes much of the evidence of syncope in the record in support of her position that she quite obviously equaled Listing 4.05. The weight of that cited evidence were just statements that she experienced episodes of syncope. She does not point to any real-time, observed episode of syncope or near syncope which was documented at that time by appropriate medically acceptable testing. The Court does not find remand to be warranted in this case.

## IV

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 12) be denied; 2) the Defendant's Motion for Summary Affirmance (Doc. 15) be granted; 3) The Clerk of Court be directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, denying benefits to the Plaintiff, Jennifer D., is AFFIRMED."; and 4) this matter be terminated.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems*

*Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on December 23, 2022.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE